UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ROBERT PAUL TAYLOR #107070-1-F** | **CASE NO. 1:17-CV-00882** |
| **VERSUS** | **JUDGE DRELL** |
| **LASALLE MANAGEMENT CO, ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## RULING

Before the court in this civil rights action are Defendants' motion for summary judgment (Doc. 220) and plaintiff's motion for partial summary judgment (Doc. 226). Defendants seek the dismissal of all claims brought by Robert Paul Taylor ("Taylor") pursuant to 42 U.S.C. §1983, alleging he was denied access to medical treatment while incarcerated at Winn Correctional Center ("Winn"). Taylor seeks partial summary judgment against Dr. Singleton, Warden Keith Deville and LaSalle Management Corporation, LLC ("LaSalle") for the denial and/or delay of medical care while housed at Winn. LaSalle is the successor operator of Winn following turnover from Corrections Corporation of America ("CCA").

I.   Background

In 2013, while housed at Orleans Parish Prison, Taylor was apparently subjected to the use of excessive force by correctional officers. Specifically, he was kicked in the scrotum and suffered a ruptured epididymis and pierced scrotum. Taylor received medical care for his injuries from the time of incident to the time he was transferred to Winn in February 2014.

Taylor does not take issue with the medical treatment he received at Winn while it was operated by CCA. Rather, he alleges that from the time LaSalle took over the operation of Winn on September 30, 2015 until the time he was transferred to another Louisiana Department of

Corrections facility on approximately July 12, 2016, the defendants, Warden Keith Deville, Mark Singleton, Ami Brunson, and LaSalle[1], intentionally denied and delayed his medical treatment.

According to Taylor's complaint and amended complaint (Docs. 1 and 11), the defendants intentionally denied and delayed medical treatment for his deteriorating health conditions including but not limited to hypertension, urinary blockage, scrotal mass, and inability to urinate. Additionally, he says the defendants discontinued his prescriptions for Neurontin, Ultram, Bactrim and Flomax and cancelled his follow up appointments with urologists. Taylor further alleges that the denial and delay of medical care was without cause on his part and related to budget cuts when LaSalle took over from CCA. As a result of the denial and delay of medical care, Taylor contends he suffered "excessive damage to his right testicle" including pain and a "continuous burning and throbbing sensation." (Doc. 1-2, p.9).

Taylor also loosely asserts that he was subjected to excessive use of force because he was assaulted by Warden Deville and Michot in his cell on November 7, 2015.

II.   Law and Analysis

   A.   Standard of Review

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is considered "material" in the context of the court's analysis when its existence or nonexistence affects the outcome of one or more claims under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" when the evidence would permit a reasonable fact finder to render a verdict in favor of the nonmoving party. Id.

---

[1] Taylor also named Winn Correctional Center, Burton Michot, and Daniel Marr as defendants, but they were dismissed via an earlier joint motion to dismiss (Docs. 80 and 85).

The moving party bears its burden by supporting its motion with specific portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any which it believes demonstrate the absence of any genuine dispute of material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Anderson, 477 U.S. at 247). A defendant will meet this burden when it shows a lack of evidence to support plaintiff's claim on an issue as to which plaintiff will bear the burden of proof at trial and plaintiff is unable, in response, to produce summary judgment evidence sufficient to sustain a finding in plaintiff's favor on the issue. James v. State Farm Mut. Auto Ins. Co., 743 F.3d 65, 68 (5th Cir.2014) (quoting Kovacic v. Villarreal, 628 F.3d 209, 212 (5th Cir.2010).

We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011)(internal quotations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

B. Deliberate indifference to medical needs

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to the serious medical needs of prisoners. See Farmer v. Brennan, 511 U.S. 825, 834, (1994); Estelle v. Gamble, 429 U.S. 97, 105 (1976). Deliberate indifference "is an extremely high standard to meet." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health and safety" and disregards that risk. Farmer, 511 U.S. at 837.

3

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir.2006) (citing Domino v. Tex. Dep't. of Crim. J., 239 F.3d 752, 756 (5th Cir.2001); Carlucci v. Chapa, 884 F.3d 534, 538 (5th Cir.2018).

A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992). However, a decision of whether to provide additional medical treatment is a classic example of a matter left for medical judgment. See Gobert, 463 F.3d at 347; Domino, 239 F.3d at 756.

A prisoner's dissatisfaction with the care choices made by prison medical personnel does not, on its own, present a constitutional violation. Sama v. Hannigan, 669 F.3d 585, 590 (5th Cir.2012) (citing Gobert, 463 F.3d at 346); Carlucci, 884 F.3d at 538. Negligence, even gross negligence, does not implicate the Constitution and does not provide a basis for a §1983 claim. Farmer, 511 U.S. at 836. ("[D]eliberate indifference entails something more than mere negligence."). Prisoners are not entitled to the "best medical care money can buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir.1992).

Although Taylor asserted in his complaints that he was denied medical care during his incarceration at Winn, it is evident from his deposition testimony that the actual time period about which he complains is from October 2015 through July 2016. Taylor contends that when LaSalle took over the operation of Winn in October 2015, LaSalle implemented budget cuts which resulted in Taylor not receiving his medications and/or not being seen in the urology clinic at Ochsner LSU

4

Health Shreveport ("Ochsner"). As a result of the denied medical care, Taylor argues his condition worsened.

We have thoroughly reviewed all of Taylor's medical records and find Taylor's contentions lack merit. We first address Taylor's assertion that he was not seen at the Ochsner urology clinic once LaSalle took over operations of Winn. Ochsner medical records show that Taylor was first seen at the urology clinic on March 28, 2014, and he continued to be seen at all scheduled appointments during his time at Winn. Taylor was initially scheduled to be seen in the urology clinic ever three months (March 28, 2014 through September 18, 2015) and then was changed to be seen every six months (December 18, 2015 and June 24, 2016). Taylor made all appointments scheduled at the clinic during the entirety of his time at Winn. (Doc. 101).

Taylor also asserts certain surgery to have the spermatocele excised was delayed by defendants. However, the medical records show that it was Taylor who delayed having surgery. On more than one occasion, Taylor told those at the urology clinic that he did not wish to have the spermatocele excised. Although his chart on June 26, 2016, (Taylor's last urology appointment while housed at Winn) did note initially that Taylor stated he "want[ed] it out," a follow up notation indicated that Taylor ultimately decided to continue with observation rather than surgery. (Doc. 101, p.1930 and 33).

Taylor's contention that he was denied medical care on July 6, 2016 and July 7, 2016 also lacks merit. Taylor's alleged evidence in support of this claim, two separate "Incident Statement[s]." (Doc. 273-1, p.51-52). These two forms were filed into the record by Taylor without certification. We consider that fact important when considering the validity of the forms. The "Incident Statement[s]" are old CCA forms, not forms used by LaSalle for sick call. Furthermore, there is no indication that medical personnel at Winn ever received the forms. If

they were provided to Winn medical personnel, the forms should contain some sort of notation of receipt as all other forms received in due course by medical personnel are stamped "received" and dated. Yet, these two forms contain neither a date stamp nor a signature at the bottom evidencing the forms were in fact received. Without more, we cannot say that defendants were aware of any complaints by Taylor on either of those days.

Taylor's assertion that he was denied medical care because he was in segregated lockdown also fails for lack of evidence. The record shows that Taylor requested segregation because he could not urinate, and that request was honored. Other than Taylor's bald assertion, the record is devoid of any suggestion that Taylor did not receive medical care during the time he was in segregation.[2] Without evidence that Taylor made any complaints to medical personnel during the time he was on lockdown, we cannot consider, much less conclude, the defendants were deliberately indifferent to his medical care during that time..

As to Taylor's allegation that his medications were discontinued because of budget cuts, we find no such evidence. While the medical records do show he did not always receive his prescribed medications, Bactrim, Tramadol (brand name Ultram), Gabapentin (brand name Neurontin) and Tamsulosin (brand name Flomax) from Winn, any failure to receive the medication was because of the fact the prescriptions had expired. Taylor's prescription for Bactrim expired March 2015; his prescription for Tramadol expired in in April 2015; and, his prescriptions for Gabapentin and Tamsulosin expired in January 2016.[3]  Although Taylor complained to those at Ochsner urology clinic that he was not receiving his medications, there is no evidence in the record

---

[2] Although Taylor states he was placed in segregation without a disciplinary write up, the record shows his placement in segregation was a result of his request to be placed there for medical reasons.
[3] Although Taylor was seen at the urology clinic on December 18, 2015 and continuation of gabapentin, tramadol and tamsulosin were discussed with the doctor, no medications were ordered. (Doc. 1918 and 1922). Taylor was not seen again until June 24, 2016, and that appointment tamsulosin, ibuprofen, and gabapentin were ordered. (Doc. 1933).

6

which shows he complained to anyone at Winn about the issue. There is likewise not explanation as to how or why the prescriptions were allowed to expire. This lack of evidence is particularly telling since, as we find, Taylor was keeping his periodic urology clinic appointments.

Taylor's contention that the "malingering" notation in his medical transfer summary prepared by Winn evidences their indifference lacks merit. As explained above, Taylor received all outside medical care for which he was scheduled. It was he who chose not to undergo surgery, not anyone at Winn, and he continued to receive nerve medication during the time period that he was not provided a refill on Gabapentin. Taken as a whole, the medical evidence in the record establishes that Taylor received appropriate medical care for his urological problems. The record, specifically Taylor's deposition and medical evidence, does not show he was denied medical care. See McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir.1990) (upholding the dismissal of a deliberate indifference claim where medical records documented that the prisoner was not denied medical attention). Although Taylor clearly disagrees with the treatment he received, such disagreement does not state a constitutional claim. See Rogers v. Boatright, 709 F.3d 409, 410 (5th Cir.2013); Estelle v. Gamble, 429 U.S.97, 107 (1976) (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical judgment").

Regarding Taylor's assertion that Warden Deville was deliberately indifferent to Taylor's medical needs, we need not look any further than Warden Deville's uncontested deposition testimony. Therein, Warden Deville stated he was not involved in medical decision, had no medical training, never personally provided treatment to Taylor, and he had his medical personnel handle all medical issues.

Finally, we deny all claims by Taylor against LaSalle as he failed to establish any policy or custom of deliberate indifference to medical care or deliberate indifference in establishing

policies, procedures or customs which would lead to inadequate medical care, nor did he name a policymaker as a supposed blameworthy party.

C. Excessive Force Claim

To the extent Taylor has asserted a claim against Warden Deville and Michot for excessive force, such claims are denied as untimely. Federal law does not establish a statute of limitations for Section 1983 claims; therefore, federal courts must borrow a relevant statute of limitations from the forum state. Wallace v. Kato, 549 U.S. 384, 387 (2007); Rodriguez v. Holmes, 963 F.2d 799, 803 (5th Cir.1992). As Section 1983 claims are best characterized as personal injury actions, we borrow Louisiana's one-year prescriptive period for personal injury claims. Moore v. McDonald, 30 F.3d 616, 620 (5th Cir.1994); Louisiana Civil Code art. 3492. As Taylor's purported excessive force claims occurred more than a year before he filed his lawsuit, the claims are untimely.

D. State Law Claims

When, as here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. §1367(c); see Preister v. Lowndes County, 354 F.3d 414, 425 (5th Cir.2004) (citation omitted). As a general rule, state claims should be dismissed when the federal claims to which they are pendent are dismissed. Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir.1992). As the Louisiana state court is better left to analyze Taylor's negligence claim under a duty risk analysis and his claim for unfair trade practices under the Louisiana Unfair Trade Practices Act, the state claims will be dismissed without prejudice.

E.  Conclusion

Given the findings of court above, Taylor's motion for partial summary judgment will be DENIED and Defendants' motion for summary judgment will be GRANTED.

THUS DONE AND SIGNED this 23RD day of November 2020 at Alexandria, Louisiana.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT